## Henry Barker & others *vs.* Samuel Bigelow.

The articles of a voluntary loan fund association provided that every member should pay on each of his shares an entrance fee of one dollar, and two dollars every month as monthly dues, and for any nonpayment on each share should be fined not exceeding one dollar a month, and if the neglect continued for six months, his shares might be declared forfeited; that, as often as the funds of the association should amount to the sum of five hundred dollars, the same should be put up to competition among the members, and the member offering the highest premium should be entitled to it, and should secure the payment of "his subscriptions, interest, fines, &c." by a mortgage of real estate to the association, and should pay from the time of purchase interest at the rate of six per cent. per annum on the sum advanced, monthly, as a redemption fee; that the association should end whenever its funds should be sufficient to pay five hundred dollars on each share, which should not have been redeemed by the association, to the holder thereof; that when any mortgagor should desire to redeem his land from his mortgage, he should apply to the directors, who should "decide the amount to be paid by the mortgagor," upon payment of which he should receive a discharge and release of the mortgaged premises; and that whenever the monthly dues on any shares redeemed by the association should amount to the sum for which those shares were redeemed, and those dues, together with the monthly interest and all fines and other charges against the shares, should have been paid, the mortgage and bond given as security for the payment of the dues should be considered satisfied and be discharged. A member of the association purchased shares according to the articles of association, received the amount thereof, deducting the discount, and gave a bond and mortgage to secure the payment of interest monthly on the sum so received, and of monthly dues, until the termination of the association, and all fines charged to him pursuant to the articles of association. *Held*, that the bond and mortgage were valid ; that the mortgagor. having paid according to the articles his monthly dues and fines, and applying to the directors to redeem his land from his mortgage, before his monthly dues amounted to the sum thus advanced to him, could not be required by the directors to pay more than that sum, adding any unpaid interest thereon, deducting the amount of the monthly dues already paid without interest, and making no deduction for entrance fees; and that, if the directors demanded more, and the mortgagor offered to pay less, than the sum so computed, the amount for which conditional judgment should be entered on a writ of entry to foreclose the mortgage was the sum so computed, with interest from the time when the directors rendered their account to him to the time of judgment, and costs of suit, but without fines for nonpayment of monthly dues meanwhile.

WRIT OF ENTRY, dated May 26th 1857, by the trustees of the Quincy Loan Fund Association, to foreclose two mortgages of land in Cambridge, made, one in June and the other in December 1854, by the defendant to two of the plaintiffs, and to a third person who had since resigned his trust and released his title to the plaintiffs, the considerations named in which were respectively the payment of $1,989.50 and $600, and the condition of

which was thus: "Provided, nevertheless, that if the said Samuel Bigelow, his executors, administrators or assigns, shall pay unto the said grantees, their successors in said trust, or assigns, or to the proper officers of said association, the sum" of $29.50 by the first mortgage, and $9 by the second, "per month, until the termination of said association, and also all fines which may be charged to him pursuant to the articles of said association, and shall keep all other covenants, promises and agreements made with the said grantees, according to the tenor of a bond of even date herewith, signed by said Samuel Bigelow, to said grantees, and shall fulfil all the obligations of said bond, and shall meantime keep the buildings standing on the land aforesaid insured against fire in a sum not less than" the amount of the consideration, "for the benefit of said mortgagees, their successors in said trust and assigns, at such insurance office as they shall approve, and also pay all taxes levied or assessed upon the said premises, and shall indemnify said grantees and said association and its members from any loss, cost, damage, expense or delay, by reason of the nonfulfilment of any of the conditions hereof or of said bond, then this deed, as also said bond, shall be absolutely void to all intents and purposes."

The condition of each bond was that, if the defendant, his heirs, executors or administrators, should pay to the parties named in the condition of the mortgage the monthly sum therein named, on the first Wednesday of every month, "until the termination of said association, whereof said obligor is a member, and also all fines which shall be charged to him, pursuant to the articles of said association, during said period, and also shall keep or cause to be kept all other covenants, promises and agreements entered into by him as member of said association and subscriber for," in one bond, "ten," in the other, "three shares thereof, according to the true intent and meaning of said articles, then this obligation shall be void, but otherwise shall remain in full force and virtue."

The articles of association were similar to those of the Merrimack Mutual Loan Fund Association, the material parts of which are printed in 13 Gray, 158 – 162, *note,* except that the

sixteenth article (corresponding to article 13 of that association) was entitled " Bidding for ·Loans," and used the term " subscribe for," instead of " purchase," additional shares ; and that the time of " Termination of the Association " was defined in the thirty-third article (corresponding to article 30 of the Merrimack Association) as " whenever it shall appear by the books of the association that there is sufficient money on hand and due the association to pay, on each share which has not been redeemed by the association, to the holder thereof, the sum of five hundred dollars, over and above all debts and liabilities of the association," &c.

The twentieth article (like article 17 of that association) relating to " Redemption of Mortgaged Premises," was as follows : " When any mortgagor to this association shall desire to redeem his premises from the mortgage upon them, he shall give seven days' notice to the secretary before the next meeting of the board of directors.  The secretary shall lay the matter before them, and they shall decide the amount to be paid by the mortgagor.  In case this sum is agreed to by the mortgagor, he shall pay the said amount and receive a discharge and release of the mortgaged premises, and all the papers and documents connected therewith."  This article was amended, in October 1855, according to the provisions of the articles, by the addition of the following :  " And whenever the monthly dues which may be due on any shares which have been redeemed by the association shall amount to the sum for which the same were redeemed, and said dues having been paid, together with the monthly interest and all fines and other charges against said shares, the mortgage and bond given as security for the payment of said dues shall be considered satisfied and be discharged."

The question for what amount conditional judgment should be entered was submitted to the decision of the court upon the following facts : The defendant on the 2d of May 1854 purchased ten shares of the association, and subscribed the articles ; and in October and December purchased three shares from other members of the association ; and paid his monthly dues, fines and interest, according to the articles of association, until

the 7th of January 1857. At different times in 1854, at meetings of the association duly called, he bid for the redemption of his thirteen shares at about $300 discount a share, and these shares were duly struck off to him, and the amount of the shares, deducting the discount, paid to him, amounting in all to the sum of $2,589.50, being the sum of the considerations named in the two mortgages. On the 21st of January 1857 the defendant gave notice in writing to the association of his desire to redeem his land from his mortgages, and of his intention to withdraw from the association on the 4th of February 1857, stating his willingness to pay to the association the amount due to them from him, and asking for a true statement of his account. The directors rendered him an account, in which they charged him with the amount of the sums paid to him by way of loan as above stated, with the monthly dues payable on the 4th of February 1857, and with " interest and profit to February 4th 1857, as per rule when mortgages are discharged," including in this item the sum of $235.07 in addition to interest on the amount of the loans; and credited him with the entrance fees, monthly dues and interest paid by him, without allowing him interest on such payments; and thus showed a balance due to the association on the 4th of February 1857 of $1,829.57. The defendant refused to pay more than $1,517.75, which was the sum due if interest on such payments, the entrance fees, and the above sum of $235.07 were to be deducted.

*H. Gray, Jr.,* for the plaintiffs, cited *Merrill* v. *McIntire,* 13 Gray, 157; *Baxter* v. *McIntire,* 13 Gray, 168; *Silver* v. *Barnes,* 6 Bing. N. C. 180, and 8 Scott, 300; *St.* 6 & 7 W. 4, *c.* 32; *Cutbill* v. *Kingdom,* 1 Exch. 504; *Burbridge* v. *Cotton,* 5 De Gex & Smale, 27; *Fussell* v. *Daniel,* 10 Exch. 581; *Hall* v. *Daggett,* 6 Cow. 657; *Citizens' Mutual Loan Fund Association* v. *Webster,* 25 Barb. 263; *Saunders* v. *Frost,* 5 Pick. 267; *Card* v. *Carr,* 1 C. B. (N. S.) 197; *Milnes* v. *Gery,* 14 Ves. 409; *McCarren* v. *McNulty,* 7 Gray, 141; *Scott* v. *Avery,* 8 Exch. 500, 502, and 5 H. L. Cas. 811; *Russell* v. *Pellegrini,* 6 El. & Bl. 1026; *Grinham* v. *Card,* 7 Exch. 833; *Cooper* v. *Bertram Shotts Friendly Society,* 3 Shaw & Dunlop, 648; *Manson* v. *Doull,* 2

Dunlop, Bell & Murray, 1015; *Monongahela Navigation Co.* v. *Fenlon,* 4 W. & S. 205; *Faunce* v. *Burke,* 16 Penn. State R. 479 *& seq.; Archer* v. *Harrison,* 7 De Gex, Macn. & Gord. 404; *Fleming* v. *Self,* 3 De Gex, Macn. & Gord. 997; *Seagrave* v. *Pope,* 1 De Gex, Macn. & Gord. 803; *Armitage* v. *Walker,* 2 Kay & Johns. 211; *Mosley* v. *Baker,* 6 Hare, 103, 1 Hall & Twells, 305, and 3 De Gex, Macn. & Gord. 1034; *Morrison* v. *Glover,* 4 Exch. 430; *Doe* v. *Glover,* 15 Q. B. 103; Rev. Sts. *c.* 107, §§ 5, 6; *Stewart* v. *Clark,* 11 Met. 389, 390; *Mann* v. *Richardson,* 21 Pick. 359; *Adams* v. *Brown,* 7 Cush. 223; *Maynard* v. *Hunt,* 5 Pick. 240.

*L. Shaw, Jr., (J. J. Clarke* with him,) for the defendant, cited *Merrill* v. *McIntire,* 13 Gray, 165; *Fuller* v. *Salem & Danvers Loan Fund Association,* 10 Gray, 94; *Dean* v. *Williams,* 17 Mass. 417; *Fay* v. *Bradley,* 1 Pick. 194; Rev. Sts. *c.* 107, §§ 4, 5, 29; *Amidown* v. *Peck,* 11 Met. 469; *Peck* v. *Hapgood,* 10 Met. 172; *Stanhope* v. *Manners,* 2 Eden, 197.

DEWEY, J.[*]   The decisions of this court in the cases of *Merrill* v. *McIntire,* 13 Gray, 157, and *Baxter* v. *McIntire,* 13 Gray, 168, that a bond like those in the present case is a valid bond, and that its performance may be enforced by an action upon it, or by an action to foreclose a mortgage given to secure the same sum, seem to leave nothing further open in the present case but the amount for which a conditional judgment is to be entered.

Looking merely at the case as disclosed by the mortgage deeds, and the duties required of the mortgagor to prevent a breach of the condition thereof, the rule stated by the plaintiffs, that the conditional judgment should be for the sums unpaid for the monthly dues on the respective shares, and the monthly interest on the amount of money advanced to the defendant, and any fines that may have accrued under the articles of association, all to be computed to the time of the judgment, and that the mortgages should stand as security for the future performance of subsequent liabilities secured thereby, would seem exactly adapted to this case.

[*] BIGELOW and HOAR, JJ. did not sit in this case.

But the defendant, who also asks that a conditional judgment may be entered, seeks to have the judgment entered at this time for such sum as will, if paid, forever acquit and discharge him from all further future liabilities. While it is conceded that the mortgagor cannot compel the mortgagee to receive payment at an earlier day than that stipulated in the contract entered into by the parties, it is insisted that, by force of the articles of the association of which both parties are members, or trustees representing members, the defendant has a present right to redeem his premises from the mortgages which he has given to the asso ciation. This right is said to result from the twentieth article of association, and the subsequent amendment thereof.

Under the rights secured by this article, the mortgagor, desir ing to redeem his premises from these mortgages to the associa· tion, gave the proper notice to the secretary, who brought the same before the board of directors, which board proceeded to decide the amount to be paid by the mortgagor to redeem the premises from the mortgages. This amount is made up of items fully stated by the directors, and made a part of the case before us. The mortgagor denies the correctness of this computation. It is conceded, on the part of the plaintiffs, that it embraces items beyond the amount of the loans to the mortgagor, and monthly dues and interest unpaid, adding as a charge to be paid by the mortgagor the sum of $235.07, under the charge of "profit," by which we understand a bonus to that amount is claimed for the privilege of withdrawal from all further liability to pay monthly dues, &c.

The amount of payments for monthly dues not having as yet amounted to the sum borrowed of the association, the defendant cannot enforce his right to have his mortgages now discharged under the amended article added to article 20. He has not paid the sum required by the directors. But he asserts that, having signified in due form his desire to redeem the premises, and his readiness to pay all such sums as are justly chargeable thereon, or proper to be paid before the same are discharged, he has the right to have the question of the amount to be paid fixed upon correct legal principles, and, upon failure of the

directors so to decide, to present that question to the court for revision. This is denied by the mortgagees, who insist that the right to discharge all dues, present and future, secured by the mortgages, is a mere privilege to be enjoyed by a literal compliance with the terms of the twentieth article, viz. paying the amount which the directors shall decide ought to be paid by the mortgagor.

The question thus presented is by no means free from difficulty. In an ordinary contract for a simple loan, or obligation to perform certain duties at a future distant day, dischargeable at an earlier period only upon such terms as the mortgagee might prescribe, it might be properly urged that the court could not interfere. But we have thought it our duty to look at this case in a different light; and finding the provision for a full discharge of the mortgagor's land from incumbrance of the mortgages, whenever he should desire to redeem the same, to be so fully and broadly recognized as one of the fundamental articles of the association, we are of opinion that this duty of the directors, in deciding the proper amount to be paid on such application to redeem, is not one to be exercised capriciously or under any assumption of unfounded liabilities, but that the basis of such computation must be the sum due from and properly chargeable upon the mortgagor.

The system adopted by this association in reference to its members is very peculiar, and difficult to be fully understood or carried out. The mortgages do not in terms require the payment of the sum loaned, but that is incidentally secured by the payment of monthly dues and interest, which are required to be paid. The payment of monthly interest prevents any accumulation of the principal sum loaned, and the monthly dues required to be paid furnish the security for the discharge of the principal.

Now, inasmuch as it is directly provided that, when the monthly dues paid amount to the sum loaned, and all arrearages of interest and all fines have been duly paid, the mortgages shall be considered satisfied and shall be discharged, we must understand that no further charges, such as have been claimed

in the present case, could be demanded as a condition precedent to the discharge of the mortgages, when the period shall have arrived that the monthly dues paid amount to the sum loaned.

In the opinion of the court, the same rule should apply to the case of a member desiring to redeem his mortgage at an earlier period, as at the later, when the monthly dues will discharge it. If his interest has been punctually paid, the remaining claim against him to be discharged is the principal sum loaned. Toward payment of that, the mortgagor may properly apply the gross amount of all sums paid as monthly dues, computing the same as the amount may be at the time of the adjustment. But upon such payments of monthly dues the mortgagor can claim no interest, nor require any application of them to be made as payments at the time when received. They are not payments originally required or stipulated to be paid as payments toward any loan. They are paid as the capital of the company, and paid alike by those who do, and those who do not, take loans. Those who take loans may apply them, on the final adjustment of the loans, to the discharge of the loans, but they are to be applied in a gross sum and without any allowance for interest thereon. The amount thus paid as monthly dues, the fines and interest having been duly paid, is to be deducted from the amount of money loaned, and the balance made the basis upon which the mortgages may. be redeemed. These questions would have arisen more appropriately under a bill to redeem ; but the parties have presented them in this form, and, being thus settled, they will also fix the amount for which a conditional judgment may be entered.

We do not see any grounds for applying the moneys paid as entrance fees in discharge of the sums loaned. No provision to that effect is found in the article providing for discharging the mortgage, when the monthly dues shall be equal to the loan. These entrance fees are more properly applicable to the discharge of the ordinary expenses of the association, and are not properly to be considered a deposit or payment, to be afterwards allowed to the member upon any future loan.

We have been referred to several English cases that have arisen under articles of somewhat similar associations. We have not thought it our duty to adopt to the full extent the views taken by the English courts and apply them to this case, the terms of the articles of association in the present case being, in our opinion, such as would authorize the mortgagor to redeem upon the principles we have above stated.

*Case to be referred to an assessor.*

The parties then agreed upon a supplemental statement of facts, in substance as follows: The sums advanced by the association to the defendant amount, without interest, to $2,589.50. The amount of interest unpaid on the 4th of February 1857 was for one month, or $12.95. The monthly dues paid by the defendant amount to $962. The fines imposed by the eleventh article of association (nearly resembling article 9 of the Merrimack Association, 13 Gray, 159, *note*), for neglect to pay monthly dues on the defendant's thirteen shares for six months, amount to $104; and this is all that the plaintiffs claim of the defendant in this case for fines, inasmuch as they contend that they had, though they did not and will not exercise, the right by that article to declare the share forfeited for his neglect to pay fines for that time.

Upon these facts, two questions were submitted and argued by the same counsel: First, whether the monthly dues paid by the defendant were to be credited to him at the time of the account rendered to him by the directors on the 4th of February 1857, or at the time of entering the conditional judgment. Second, whether the defendant was liable for any, and if so, for what, sum of money under the denomination of fines.

DEWEY, J. Upon the further questions submitted by the supplemental statement of facts, the court are of opinion that the gross amount of monthly dues paid by the defendant should be credited to him on the 4th of February 1857, and that no fines are proper subject of charges against him subsequently to that date, the defendant having previously signified his request to discharge his mortgages, and the plaintiffs on that day having

recognized that request by rendering him an account of all their claims against him. The details have since that period been the subject of controversy, and the result has shown that both parties were in error as to the amount justly due at that period.

The amount due on the 4th of February 1857 will be ascertained upon the principles already stated, and interest upon that sum computed to the day of entering up this judgment; and this will be the sum for which conditional judgment will be entered, and upon the payment of which, with the costs of this suit, the defendant's mortgages will be discharged.

*Conditional judgment for* $1,640.45, *with interest from February 4th* 1857, *and costs.*